**Jacqueline Margaret BREVER and Karen Alane Pitts, Plaintiffs,**

v.

**ROCKWELL INTERNATIONAL CORPORATION, a corporation; EG & G, Inc., a corporation; EG & G Rocky Flats, Inc., a corporation; William F. Weston; Ricky Carlson; Donald P. (Donnie) Bell; Michael A. Evans; Michael D. Bretz; Gary D. Poling; Patrick F. Eustrom; John E. Senna; William J. Lippold, III; Dana Dorr; Lu Oliver (a/k/a Lu Oliver–Tank); Dennis J. Wise; Blase S. Mo; Rick Williams; Jeffrey W. Shainholtz; Kevin L. Chandler; Donald G. Sherrill (a/k/a Dee Sherrill); Larren K. Kallerud (a/k/a Larry Kallerud); Paul S. Weis; and Unknown Persons, Does 1–20, Inclusive, Defendants.**

**Civ. A. No. 91–S–1958.**

United States District Court, D. Colorado.

Aug. 31, 1992.

Hartley David Alley, Wheatridge, Colo., for plaintiffs.

Michael Williams, Sean Gallagher, Denver, Colo., for defendants.

## ORDER

SPARR, District Judge.

THIS MATTER comes before the Court on two motions to dismiss.  The first is a

motion to dismiss or for more definite statement filed by Defendants EG & G, Inc., EG & G Rocky Flats, Inc., and individual Defendants Carlson, Bell, Evans, Bretz, Poling, Eustrom, Senna, Lippold, Dorr, Oliver, Wise, Mo, Williams, Shainholtz, Chandler, Kallerud, Sherrill, and Weis [hereafter the EG & G Defendants]. Defendants Rockwell International Corporation and Weston [hereafter the Rockwell Defendants] have also filed a motion to dismiss or for summary judgment. Oral argument was heard June 12, 1992. The Court now makes the following Order.

## PROCEDURAL HISTORY

The complaint in this action was originally filed in Boulder County District Court. Defendants filed their notice of removal on November 8, 1991. Both motions to dismiss were filed November 18, 1991. On January 14, 1992, Judge Carrigan ruled that this case was not related to another action on his docket, and the case was returned to the Clerk's office for random reassignment. On January 27, 1992, Plaintiffs filed their combined response to both motions. The reply briefs were filed by the Rockwell Defendants on February 14, 1992, and by the EG & G Defendants on the same day. On January 29, 1992, the Rockwell Defendants filed their motion for stay of discovery pending resolution of the motions to dismiss. The EG & G Defendants filed a similar motion on January 31, 1992. Plaintiffs responded to these motions on February 19, 1992. On March 19, 1992, a Rule 16 scheduling conference was held, at which time the motions to stay discovery were granted. Plaintiffs' motion to strike the reply briefs filed by Defendants was denied on February 26, 1992. Because discovery has been stayed, the Court will consider the motions only under the Fed. R.Civ.P. 12(b)(6) standard.

■ This Court will consider the sufficiency of pleadings in the Plaintiff's (second amended) complaint within the four corners of the complaint. The court will not consider extrinsic documents or questions of fact in considering the motions to dismiss and will rule on the motions as a

matter of law only. Dismissal under Rule 12(b)(6) requires a legal determination that the plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In considering the complaint, all well-pleaded facts, as distinguished from conclusory allegations, must be taken as true. *Swanson v. Bixler,* 750 F.2d 810 (10th Cir.1984). The Tenth Circuit has also recognized that the Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim. *Morgan v. City of Rawlins,* 792 F.2d 975, 978 (10th Cir.1986), *quoting Auster Oil & Gas, Inc. v. Stream,* 764 F.2d 381 (5th Cir.1985), *cert. denied,* 488 U.S. 848, 109 S.Ct. 129, 102 L.Ed.2d 102 (1988).

## I. PLAINTIFFS' CLAIMS UNDER 42 U.S.C. § 1985 AND § 1986

The first claim for relief states simply: "Defendants' actions and failures constitute violations of 42 U.S.C. §§ 1985 and 1986, prohibiting conspiracy to interfere, or failure to prevent such interference, with civil rights including the giving of testimony as a witness before any court of the United States." In the Plaintiffs' response to the motions to dismiss, it became apparent that the Plaintiffs were asserting a claim under § 1985(2). The Plaintiffs indicated at the hearing that they did not intend to assert any claims under § 1985(3), but would proceed on claims under § 1985(2). The Court's analysis will initially focus on the sufficiency of Plaintiffs' claim under § 1985(2).

### A. *Plaintiffs' Claims Under § 1985(2)*

There are four distinct causes of action under § 1985(2). *Wright v. No Skiter,* 774 F.2d 422, 425 (10th Cir.1985); *Glass v. Pfeffer,* 849 F.2d 1261, 1264 (10th Cir.1988). Plaintiffs here assert two claims under this clause of § 1985, for deterrence of testimony and retaliation as a result of testimony.

#### 1. Deterrence of Testimony

■ Plaintiffs have indicated the EG & G Defendants were not involved as defendants in this claim. At the hearing, Plain-

tiffs also indicated that the paragraphs in the complaint in which this claim is alleged are paragraphs 37, 38, and 40. The paragraphs read as follows:

37. Defendants Rockwell and EG & G did, [sic] authorize, ratify, or condone the acts of the individual defendants, either by virtue of participation in said acts, failure to take proper steps to prohibit said acts from occurring, or failure to reprimand and discipline the employees involved. Furthermore, all defendants, including Rockwell and EG & G, having knowledge that the wrongs were being committed, or were about to be committed, and having power to prevent the commission of same, neglected or refused to prevent or aid in preventing the commission of same.

38. Defendants, and each of them, including defendants Rockwell and EG & G, conspired to carry them out and further the campaign of harassment, intimidation, and exposure to physical risks, including radiation exposure, with the intent of coercing plaintiffs into falsifying, concealing, or misrepresenting factual information in their interviews with the FBI and their sworn testimony before the U.S. Grand Jury, under subpoena. As a further object of said conspiracy, defendants intended to subject plaintiffs to severe emotional distress and harm not arising out of or related to the course and scope of either plaintiffs' or defendants [sic] employment with defendants Rockwell and EG & G.

40. The conspiracy of defendants, and each of them, alleged herein arose and was carried out by express agreement, implicit agreement, concert of action, or communication, both direct and indirect, which in effect, constituted a civil conspiracy as defined by the applicable law. Defendants, and each of them, did conspire to deter, by force, intimidation, or threat, the plaintiffs from being witnesses in a court of the United States, from attending said court, and from testifying to a matter pending therein, freely, fully, and truthfully,; and did conspire to injure plaintiffs in their person [sic] or property on account of their having attended or testified.

The three elements of this claim include conspiracy, deterrence, and injury. With regard to the first element, it is not enough to simply show the existence of a conspiracy, it must be a conspiracy which contains the requisite statutory purpose. *Brown v. Chaffee,* 612 F.2d 497, 502 (10th Cir.1979). Conspiracy under this claim must be one directly affecting the act of testifying as a witness. *Id.,* citing *Brawer v. Horowitz,* 535 F.2d 830, 840 (3d Cir. 1976). In *Brown,* the Tenth Circuit held that the facts supporting plaintiff's allegations, even if true, did not state a § 1985(2) claim because they did not sufficiently demonstrate direct deterrence of the plaintiff's testimony. Threatening statements alone are not sufficient to establish conspiracy. A civil conspiracy requires the combination of two or more persons acting in concert. *Singer v. Wadman,* 745 F.2d 606, 609 (10th Cir.1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1396, 84 L.Ed.2d 785 (1985). Plaintiffs must establish, by either direct or circumstantial evidence, a meeting of the minds or agreement among the defendants. Without any evidence of communication between the actors, there is nothing to give rise to the inference that they conspired. *Abercrombie v. City of Catoosa, Oklahoma,* 896 F.2d 1228, 1231 (10th Cir. 1990). There is no race or class-based animus necessary for conspiracy under the first clause of § 1985(2). *Kush v. Rutledge,* 460 U.S. 719, 726, 103 S.Ct. 1483, 1488, 75 L.Ed.2d 413 (1983). Plaintiffs have failed to allege in their complaint any communication between actors or a combination of two or more persons, acting in concert, to achieve the prohibited purpose of deterring testimony. Because there is nothing which may be construed as evidence of communication or agreement, as a matter of law there can be no conspiracy.

With regard to the deterrence element, actual deterrence or intimidation is required for injury, as absent the element of intimidation or deterrence, a plaintiff can suffer no injury under § 1985(2) or state a colorable claim. *Glass v. Pfeffer,*

**428**

849 F.2d at 1265. This requirement of actual deterrence is consistent with decisions of other circuits. *Rylewicz v. Beaton Serv., Ltd.,* 888 F.2d 1175, 1180–81 (7th Cir.1989); *Rutledge v. Arizona Board of Regents,* 859 F.2d 732, 735–36 (9th Cir. 1988). *McLean v. International Harvester Co.,* 817 F.2d 1214, 1218 (5th Cir.1987); *Morast v. Lance,* 807 F.2d 926, 930 (11th Cir.1987). Due to the Plaintiffs' method of pleading, it is not possible to identify what the deterrent or intimidating acts consisted of, and consequently, the Court cannot ascertain any effect any Defendants' actions might have had on Plaintiffs' testimony before the United States Grand Jury. The Plaintiffs were able to successfully present their testimony to the federal grand jury. Because there was no actual deterrence or intimidation resulting in the prevention of the Plaintiffs' testimony, there can be no deterrence claim as a matter of law. The Court rejects Plaintiffs' arguments that the success of the deterrence is not relevant, as it is clearly relevant to its effect, and the nature and existence of any asserted injury.

The injury element is problematic here because there has been no connection made between particular acts and actors and resultant efforts to deter Plaintiffs' testimony. The Court cannot conclude that Plaintiffs have stated a § 1985(2) deterrence claim. Apart from failing to identify any injury sustained, Plaintiffs have been unable to determine the actors whose acts in concert were designed to result in the deterrence of the Plaintiffs' testimony. Plaintiffs have identified paragraphs 37, 38, and 40 as the bases for the deterrence claim, but these paragraphs are of no assistance as they do not describe particular acts which might form the basis of a conspiracy to deter testimony and also fail to indicate the existence of any agreement. Plaintiffs argue to no avail that the *Brown v. Chaffee* decision is incorrect to the extent that it requires a witness not to take the stand. The Court need not pass on the question of whether it was necessary for Plaintiffs to be parties to the proceedings because their deterrence claim fails for other reasons (this point was raised in EG & G Defendants' reply brief at 7).

2. Retaliation for Testimony

▮ With regard to the § 1985(2) claim, Plaintiffs have identified paragraphs 31 through 35 of their complaint as providing the basis for their retaliation claim. There is no Tenth Circuit authority on the elements of a § 1985(2) retaliation claim. In *Deubert v. Gulf Savings Bank,* 820 F.2d 754 (5th Cir.1987), the Fifth Circuit outlined three elements of a claim for conspiracy to retaliate for the giving of testimony: requisite underlying proceeding in federal court; allegation of a nexus between the alleged conspiracy and the proceeding in federal court; and injury on account of having testified in federal court. 820 F.2d at 758.

There is little dispute that there was an underlying federal proceeding (in which the Plaintiffs testified before the grand jury). In considering the element of conspiracy connected with the court proceeding, Plaintiffs encounter a problem common to their deterrence claim. Once again, there is no allegation of communication or agreement to enter into a conspiracy. At the hearing, Plaintiffs indicated that the excerpted paragraphs above contained the salient information for this particular claim. In paragraph 31, Plaintiffs mention only the October 30, 1989 date for transfer from the "hot" side of the plant to the "cold" side at the request and insistence of the FBI and the Department of Justice. The following four paragraphs refer to continued or further harassment. The only assertion which might have some bearing on retaliation is contained in paragraph 33, but it appears to have little relevance to the retaliation claim.

There is nothing asserted, nor can anything be construed by this Court which would amount to a "nexus" or some other relationship between the purported conspiracy to retaliate and the Plaintiffs' testimony in federal court. In fact, paragraph 33 would otherwise appear to be a deterrence claim, based on the language "to further intimidate her from telling the truth." None of these claims is identified as being retaliatory in nature or otherwise retribu-

tive for the Plaintiffs' testimony. Indeed, it appears that Plaintiffs would have these claims read so as to substantiate their § 1985(2) claims, their intentional interference claims, as well as those for outrageous conduct and perhaps wrongful discharge.

At the hearing, Plaintiffs pointed to *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), to support their assertions that the pleadings regarding conspiracy were sufficient. The Supreme Court in *Griffin* held that § 1985(3) does not require state action and that Congress, in passing the statute, had the authority to reach private conspiracies (reversing *Collins v. Hardyman*, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951)). It is difficult to say which portion of the *Griffin* decision the Plaintiffs rely upon for their assertion that the conspiracy pleading in this action somehow is sufficient under the *Griffin* standard. Justice Stewart's opinion was careful to point out "[t]hat the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others." 403 U.S. at 101, 91 S.Ct. at 1798. Indeed, the decision further explained that although the legislation's proponents insisted on coverage of private conspiracies, this in no way implied that "Congress had a right to punish an assault and battery when committed by two or more persons within a State." *Id.* at 101–02, 91 S.Ct. at 1798.

In Plaintiffs' response brief, they state that they have alleged sufficient facts to state a claim for conspiracy to retaliate with the requisite intent to injure. Plaintiffs cite as examples of these overt acts the intentional exposure to radiation; vandalizing, shooting, tampering with automobiles; and attempted arson of Plaintiff Pitts's residence. However, the specific paragraphs which Plaintiffs cite to in the complaint make no mention of any particular Defendant or Defendants involved, whether the acts were done in furtherance of a conspiracy, and whether the purpose of the conspiracy was to deter or retaliate for the giving of testimony (or any other conspiracy), and which particular acts were done in furtherance of the conspiracy. Indeed, the factual allegations are so vaguely described and characterized that the allegations supporting the § 1985(2) claims appear to be the same as those supporting the state law claims for outrageous conduct. Even if the Court construed these allegations as true, which must be done in these circumstances, there is not sufficient pleading or allegations of facts to withstand a motion to dismiss. The use of the term "conspiracy" with factual allegations will not automatically cause a conspiracy claim to exist or be properly pleaded. The *Griffin* case is of little assistance to Plaintiffs here, and their vague references to conspiracies must fail.

Plaintiffs also cite to *Adickes v. S.H. Kress*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), for the argument that they have alleged sufficient facts upon which an inference of conspiracy can be made. Even if Plaintiffs could have sufficiently identified a conspiracy based upon inferences from a certain sequence of events, it is difficult at best to infer what the purpose of such a conspiracy would be and which would be the resulting injuries. It is also not possible to identify the members of the conspiracy. These is no way to tell how the "campaign of harassment and intimidation" referred to in paragraph 28 of the Plaintiffs' response brief, relates to either of the § 1985(2) claims and their alleged injuries.

With regard to the element requiring a nexus between the federal court proceeding and the conspiracy, Plaintiffs here refer to the federal court proceeding once, and there is certainly no reference to any sort of "nexus" or other connection linking any act which could be identified as retaliatory with respect to the giving of Plaintiffs' testimony. The only mention of the federal court proceeding is with regard to the particular action of only one Defendant, and this appears more relevant to the deterrence claim.

Concerning the injury resulting from the alleged retaliation, this element fails for the same reasons the other two elements are deficient. There is no indication that

particular allegations are identified with this claim under § 1985(2). The references to damage or injury are of such a general nature that it is not possible to discern which injury is associated with this claim. The Fifth Circuit observed in *Deubert v. Gulf Savings Bank*, 820 F.2d at 758:

> [T]he statute was not intended to create a federal tort remedy for economic retaliation against those who pursue work-related claims. (Citations omitted.) Since the plaintiffs have not alleged that they were injured as a result of their having attended or testified in a court proceeding, the district court properly dismissed the claim under § 1985(2).

Because the Plaintiffs have not alleged the requisite nexus between the federal court proceeding and a conspiracy to retaliate which resulted in injury to them, their retaliation claim under § 1985(2) must be dismissed. It is not necessary to reach the intracorporate conspiracy issue because of this conclusion (this argument is presented in the Rockwell Defendants' reply brief at 3–5 and the EG & G reply brief at 5–6).

### B. The § 1986 Claim

Because this claim is dependent on the success of the § 1985(2) claims, it must also fail. *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir.1990).

## II. PREEMPTION OF PLAINTIFFS' STATE TORT CLAIMS

The second claim in the Plaintiffs' complaint is against all Defendants for outrageous conduct. The third claim is against all Defendants for a claim identified as "intentional harassment and intimidation for the performance of statutorily required duties and/or statutorily guaranteed rights." The fourth claim is against Defendants Rockwell and EG & G for wrongful discharge. The fifth claim, by Plaintiff Brever only and against all Defendants, is for intentional infliction of emotional distress. The sixth claim is by Plaintiff Pitts only, against all Defendants except Senna, Lippold, Chandler, Kallerud, Weis, and Shainholtz for intentional infliction of emotional distress. Finally, the seventh claim is by

both Plaintiffs against all Defendants for conspiracy to commit all of the preceding claims. Before the Court examines these claims individually, it must first consider the issue of preemption of the state law claims by § 301 of the Labor Management Relations Act (LMRA).

### A. Preemption by Section 301 of the Labor Management Relations Act

A primary issue relating to Plaintiff's state tort claims is whether they are preempted by § 301 of the LMRA. With regard to artful pleading and the preemption doctrine, "federal courts look beyond the allegations of the complaint ... to determine whether the wrong complained of actually arises in some manner from a breach of the defendant's obligation under a collective bargaining agreement." *Local No. 57 v. Bechtel Power Corp.*, 834 F.2d 884, 888 (10th Cir.1987), *cert. denied* 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988) (citations omitted). The Tenth Circuit also noted in that decision that state law rights and obligations that do not exist independent of private agreements, and that as a result can be waived or altered by agreement of private parties, are preempted by those agreements. *Id.* at 889.

The preservation of uniformity in federal labor law is paramount. *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962). In *Allis–Chalmers v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), the Supreme Court held that "[i]f policies that animate § 301 are to be given their proper range, however, the pre-emptive effect of § 301 must extend beyond suits alleging contract violations." *Id.* at 210, 105 S.Ct. at 1911. In the interests of uniformity and predictability of federal labor law, the Supreme Court also stated that "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would

elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract." *Id.* at 211, 105 S.Ct. at 1911.

In *Lingle v. Norge Division of Magic Chef,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the Supreme Court reiterated the overriding concern in *Teamsters v. Lucas Flour* and the *Allis–Chalmers* decisions for uniformity and consistency in labor law. In *Lingle,* the Supreme Court held that a retaliatory discharge claim under Illinois law was not preempted because neither of its elements required the court to interpret any term of the collective bargaining agreement. 486 U.S. at 407, 108 S.Ct. at 1882. The Supreme Court further explained that the consideration of parallel facts does not necessarily render analysis of the state law claim dependent upon the collective bargaining agreement. It held that an application of state law is preempted by § 301 of the LMRA only if such application requires the interpretation of a collective bargaining agreement.

The *Lingle* decision has been applied by several circuit courts to support the holding that there is no preemption of retaliatory discharge claims. See *Eldridge v. Felec Services, Inc.,* 920 F.2d 1434, 1436 (9th Cir.1990); *Jones v. Roadway Express,* 931 F.2d 1086, 1089–90 (5th Cir.1991). Also in *Fox v. Parker Hannifin Corp.,* 914 F.2d 795 (6th Cir.1990), the Sixth Circuit, applying *Lingle* to a tortious interference with contract claim, held that breach of contract was not an essential element of the state law claim, and was consequently not preempted. 914 F.2d at 800. Also relevant here is *McCormick v. AT & T Technologies, Inc.,* 934 F.2d 531 (4th Cir.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 912, 116 L.Ed.2d 813 (1992), where the Fourth Circuit held that tort claims involving negligence were preempted by § 301 because it was necessary to refer to the collective bargaining agreement to determine whether a duty of care existed, and if so, its scope and nature. 934 F.2d at 536.

■ While it is true that not every dispute tangentially involving a provision of a collective bargaining agreement is preempted by § 301, *Allis–Chalmers v. Lueck,* 471 U.S. at 211, 105 S.Ct. at 1911, where the resolution of a state law claim depends upon the meaning of a collective bargaining agreement, the application of state law is preempted and federal labor law principles must be employed to resolve the dispute. *Lingle v. Norge Division of Magic Chef,* 486 U.S. at 406, 108 S.Ct. at 1881.

Plaintiffs place much emphasis on the distinction that only the elements of the state claim (and not the allegations in the complaint) are examined to determine whether an interpretation of the collective bargaining agreement is required. The conclusions regarding preemption of the claims will be made below in considering each claim separately.

**B. Consideration of the State Law Claims**

**1. The Wrongful or Constructive Discharge Claim**

■ With regard to the fourth claim for relief for wrongful discharge, this claim clearly involves interpretation of the collective bargaining agreement. Because both Plaintiffs resigned and were not discharged, the Court must consider the doctrine of constructive discharge.

In a recent decision, the Colorado Supreme Court held that "[c]onstructive discharge may occur without a formal firing, but the words or actions by the employer must logically lead a prudent person to believe his tenure has been terminated." *Boulder Valley School Dist. R–2 v. Price,* 805 P.2d 1085, 1088 (Colo.1991) (plurality), citing *Colorado Civil Rights Comm'n v. Colorado,* 30 Colo.App. 10, 16, 488 P.2d 83, 86 (1971). The court also held that a determination of whether an employer's actions amount to constructive discharge depends on whether a reasonable person under the same or similar circumstances would view the new working conditions as intolerable, and not upon the subjective view of the individual employee. *Id.*

The *Boulder Valley School Dist. R–2 v. Price* decision outlined what a plaintiff

must prove to establish constructive discharge: "a plaintiff must present sufficient evidence establishing deliberate action on the part of an employer which makes or allows an employee's working conditions to become so difficult or intolerable that the employee has no other choice but to resign." *Id.*, citing *Wilson v. Board of County Comm'rs*, 703 P.2d 1257, 1259 (Colo.1985). The CBA before the Court (submitted as exhibit A to the Rockwell Defendants' brief in support of motion to dismiss), at Article XIV, entitled "General Provisions," provides for a variety of situations pertaining to employee discipline, productivity, use of protective clothing and equipment, maintenance of records for radioactive and toxic materials, and safety concerns. The particular provisions of the article concerning safety are found at § 12 (of Art. XIV) which states at paragraph c: "With good faith and the common objective of maximum safety for all employees and for the Plant, it is agreed that problems involving the health and safety of employees will be resolved by the procedure set forth in Paragraph D below."

The only references to constructive discharge are found in paragraphs 43 and 44 of the complaint. These conclusory allegations are not sufficient to state a cognizable claim. Even if this were sufficient to state a claim, it is clear that because the Court must refer to the collective bargaining agreement for insight into what would be reasonable under Plaintiffs' working conditions. Because the Court would have to interpret the CBA to determine what intolerable working or safety conditions might consist of (as these are covered in the CBA), the claim for constructive discharge is preempted. Plaintiffs have not pleaded a claim for wrongful discharge pursuant to a public policy exception as announced recently in the *Martin Marietta Corp. v. Lorenz* decision, 823 P.2d 100, 104 (Colo.1992), nor could the Court hold that by virtue of the conclusory statements contained in paragraph 44(a) and (b), that a claim for some other type of public policy exception described in the *Lorenz* case is stated.

In *Saunders v. Amoco Pipeline Co.*, 927 F.2d 1154 (10th Cir.1991), the Tenth Circuit held that a claim for constructive discharge was preempted because the applicable collective bargaining agreement (even though the plaintiff was not a union member) contained grievance and arbitration procedures. Sections XII and XIII of the collective bargaining agreement before this Court deals with the grievance and arbitration procedures. This Court must therefore hold that the Plaintiffs' claim for either wrongful or constructive discharge is preempted. The *Saunders* court stated "[t]he applicable collective bargaining agreement between defendant and its employees governs employee discharges and provides grievance and arbitration procedures through which an employee can challenge a discharge as wrongful." *Id.* at 1156. It concluded that "[b]ecause any determination of defendant's liability under the state law claims would, thus, inevitably involve interpretation of the collective bargaining agreement, section 301 preempts those claims." *Id.* This Court notes the CBA's application in this case. The CBA, at Article XIV, § 3, provides a procedure for discipline, suspension, and discharge. The determination of whether the discharge was wrongful would necessarily involve interpreting the CBA. Consequently, the wrongful discharge claim is preempted.

2. The Retaliatory Discharge Claim

█ There exists some factual allegation which links the filing of worker's compensation claims with some type of retaliation, but this linkage with a claim of retaliatory discharge is tenuous at best. The basic problem with Plaintiffs' claim is that it is not at all clear whether the retaliation aspect of retaliatory discharge is the result of Plaintiffs' filing of worker's compensation claims, or is a result of Plaintiffs' complaints regarding their working conditions, or acts of their fellow employees.

The Plaintiffs rely on the United States Supreme Court decision in *Lingle*, 486 U.S. 399, 108 S.Ct. 1877, for their assertion that their retaliatory discharge claim is not preempted. The Supreme Court in *Lingle* recognized the overriding concern for uni-

zeokbbokb...

formity as figuring prominently in preemption analysis, but held that a court must examine the elements of the state claim to determine whether the claim requires a court to interpret any terms of the CBA. 486 U.S. at 406–07, 108 S.Ct. at 1881–82. Since the announcement of the *Lingle* decision, there has not emerged a consistent analysis in the circuit courts. This phenomenon may be attributed to the fact that each state's law must be consulted to determine whether consideration of any of its elements requires interpretation of the CBA. The Tenth Circuit determined in *Marshall v. TRW, Inc., Reda Pump Division*, 900 F.2d 1517 (10th Cir.1990) that a claim based on an Oklahoma statute was quite similar to the Illinois statute in *Lingle*. *Marshall* rejected the appellee employer's attempt to defend on the ground of preemption because the employee had allegedly violated the terms of medical leave as contained in the CBA. The *Marshall* decision held that *Lingle* dictated no preemption, and noted that the basic issue was whether there was or was not a retaliatory discharge, and the resolution of this did not require interpreting a CBA. 900 F.2d at 1521. This "basic issue" analysis was adopted by the Fifth Circuit in *Jones v. Roadway Express, Inc.*, 931 F.2d 1086, 1090 (5th Cir.1991).

In *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1331 (6th Cir.1989), the Sixth Circuit held that a retaliatory discharge (for filing a worker's compensation claim) under Michigan law was not preempted. In *Magerer v. John Sexton & Co.*, 912 F.2d 525, 529 (1st Cir.1990), the First Circuit considered Massachusetts law in determining that an element of the state law claim required interpretation of the CBA and was consequently preempted by § 301. In *Eldridge v. Felec Services, Inc.*, 920 F.2d 1434 (9th Cir.1990), the Ninth Circuit declined to determine whether Alaska state law provided an independent tort for retaliatory discharge, but held that an action for breach of the implied covenant of good faith was not preempted (as discharge in violation of public policy).

Before the Court considers the preemption issue however, it must first consider whether the Plaintiffs have stated a claim for retaliatory discharge. In *Martin Marietta v. Lorenz*, 823 P.2d at 109, the Colorado Supreme Court recognized that the public policy exception to the at-will employment doctrine applies to a discharge for exercise of a statutory right or privilege granted to workers (citing *Lathrop v. Entenmanns, Inc.*, 770 P.2d 1367 (Colo.App. 1989)). Based on the allegations in the complaint, and especially paragraphs 31(e) and 35(a), it is apparent that the Plaintiffs have failed to allege the elements of a prima facie case pursuant to the *Lorenz* decision (or its predecessors). It is only alleged that there was interference with the filing and processing of the Plaintiffs' worker's compensation claims. No relationship with the Plaintiffs' continued employment or conditions of employment is asserted. Plaintiffs allege in paragraph 39 that they have not been compensated through a worker's compensation award for the intentional infliction of emotional distress. This Court must conclude as a matter of law that Plaintiffs have failed to state a claim for retaliatory discharge under Colorado law. It is therefore unnecessary to rule on whether such a claim would be preempted by § 301 of the LMRA.

### 3. The Outrageous Conduct/Intentional Infliction Claim

The Court will treat these two separate claims as one single claim since one of the elements of an intentional infliction claim is that the conduct be extreme and outrageous. *Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 703 F.2d 1152 (10th Cir.1981) *cert. denied*, 464 U.S. 824, 104 S.Ct. 92, 78 L.Ed.2d 99 (1983). Regarding these claims asserted in the second and fifth claims of the complaint, the only specific reference in the complaint is found at paragraph 38, which alleges that Defendants conspired to carry out and further the campaign of harassment and intimidation, and that the object of the conspiracy was to subject the Plaintiffs to severe emotional distress and harm. In *Johnson v. Beatrice Foods Co.*, 921 F.2d 1015 (10th Cir.1990), the Tenth Circuit held that an employee's claims for outrageous

conduct were preempted by § 301. The court held that the appellant/employee's claim for intentional infliction closely paralleled the bad faith claim considered in the *Allis–Chalmers* decision, and was accordingly preempted. This holding was made in light of the fact that a plaintiff's claims for intentional infliction cannot be made in a vacuum, but must be considered in some context. The relevant context for the bulk of those claims was the CBA because most of the appellant's claims involved disputes which were properly subject to the grievance procedure.

In the present case, as mentioned in the discussion regarding § 1985(2), it is not possible to tell which of the acts listed in the complaint pertain to or support a particular claim for recovery. The Court will therefore consider the acts described in paragraphs 25(a)-(s), 28(a)-(g), 29(a)-(g), 32(a)-(e), and 35(a)-(*l*). The majority of the acts described in 25(a) through (s) pertain to working conditions (including work assignments), procedures (including grievances), and safety concerns, all addressed in the CBA. The allegations in 28(a) through (g) exclusively concern safety concerns, and the reasonableness of these allegations can only be considered in the context of the CBA. Concerning paragraph 29(a) through (g), at least two of the allegations concern safety procedures, one concerns record keeping, and (d), (f) and (g) appear to be unrelated to anything covered by the CBA. In paragraph 32(a) through (e), at least two and perhaps three of these allegations must be considered in the CBA context. Finally, the Court considers the allegations in 35(a) through (*l*), and must conclude that while almost all of these contentions are capable of consideration wholly apart from the CBA, these statements are too vague to form the basis of an outrageous conduct or intentional infliction of emotional distress claim. The remainder of the claims are insufficient as a matter of law to state a claim for either outrageous conduct or intentional infliction of emotional distress. *Therrien v. United Air Lines*, 670 F.Supp. 1517, 1524 (D.Colo.1987); *First National Bank in Lamar v. Collins*, 44 Colo.App. 228, 616 P.2d 154 (1980); *Meiter*

*v. Cavanaugh*, 40 Colo.App. 454, 580 P.2d 399 (1978).

### 4. The Third Claim for Relief

This claim is for "intentional harassment and intimidation of plaintiffs for performance of statutorily required duties and/or exercise of statutorily guaranteed rights." Plaintiffs have conceded that this claim does not exist under Colorado law. It is also impossible to discern which particular duties or rights were involved here. If Plaintiffs could assert this claim under Colorado law, it would most likely be duplicative of a claim pursuant to the *Lorenz* case. This claim is accordingly dismissed.

### 5. The Civil Conspiracy Claim

■ Finally, the Court will observe that Plaintiffs cannot make a claim for conspiracy to enter into a conspiracy. A corporation cannot combine with its employees for the required two or more persons for conspiracy purposes. *Zelinger v. Uvalde Rock Asphalt Co.*, 316 F.2d 47 (10th Cir. 1963). In general, the civil conspiracy claim fails for the same reasons that the § 1985(2) claims failed: there are no allegations regarding the requisite two or more persons, combining to accomplish a particular object or course of action, committing one or more unlawful overt acts, and resulting in damage to Plaintiffs. *Hawkinson v. A.H. Robins Co., Inc.*, 595 F.Supp. 1290, 1314 (D.Colo.1984); *McGlasson v. Barger*, 163 Colo. 438, 431 P.2d 778, 780 (1967); *Morrison v. Goodspeed*, 100 Colo. 470, 68 P.2d 458, 464–65 (1937).

For all of the foregoing reasons, the Defendants' motions to dismiss are granted, and Plaintiffs' complaint is accordingly DISMISSED IN ITS ENTIRETY.