**Jacqueline Margaret BREVER, Plaintiff,**

**and**

**Karen Alane Pitts, Plaintiff–Appellant,**

**v.**

**ROCKWELL INTERNATIONAL CORPORATION, a corporation; EG & G, Inc., a corporation; EG & G Rocky Flats, Inc., a corporation; Williams. F. Weston, Ricky G. Carlson, Donald P. Bell, Michael A. Evans, Michael D. Bretz, Gary D. Poling, Patrick F. Eustrom, John E. Senna, William J. Lippold, III, Dana**

Dorr, Lu Oliver, also known as Lu Oliver–Tank; Dennis J. Wise, Blase S. Mo, Rick Williams; Jeffrey W. Shainholtz, Kevin L. Chandler, Donald G. Sherrill, also known as Dee Sherrill; Larren K. Kallerud, also known as Larry Kallerud; Paul S. Weis, and unknown persons, Does 1 through 20, inclusive, Defendants–Appellees.

No. 92–1290.

United States Court of Appeals, Tenth Circuit.

Nov. 22, 1994.

Hartley David Alley, Wheat Ridge, CO, for plaintiff-appellant.

Daniel R. Satriana, Jr. (Sean R. Gallagher with him on the brief) of Hall & Evans, Denver, CO, for EG & G defendants-appellees.

Karen H. DuWaldt (Michael A. Williams and Richard P. Salgado, with her on the brief) of Williams, Youle & Koenigs, P.C., Denver, CO, for Rockwell Intern. Corp. and William F. Weston, defendants-appellees.

Before SEYMOUR, Chief Judge, SETH, and LOGAN, Circuit Judges.

SEYMOUR, Chief Judge.

Karen Pitts, a former plutonium worker at the Rocky Flats plant in Colorado, brought suit for damages in Colorado state court against Rockwell International Corporation and Rockwell's Manager of Plutonium, William Weston (collectively referred to as Rockwell defendants), EG & G, Inc., EG & G Rocky Flats, and eighteen named individual defendants,[1] as well as twenty unnamed individuals, alleging violations of 42 U.S.C. §§ 1985(2), 1986 and various state law tort claims. Defendants removed the suit from state court to federal district court pursuant to 28 U.S.C. §§ 1441, 1446. The district court dismissed all of Ms. Pitts' claims either for failure to state a claim or for preemption on the basis of section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. 801 F.Supp. 424. Ms. Pitts now appeals, raising numerous claims of error. For the reasons stated below, we reverse and remand for further proceedings.

I.

This appeal arises from a suit filed by Ms. Pitts and a co-worker, Ms. Jacqueline Brever, both former plutonium workers at Rocky

1. Because EG & G Rocky Flats, Inc. is a wholly owned subsidiary of EG & G, Inc., they will be referred to together as EG & G. EG & G and the individually named defendants will be referred to collectively as the EG & G defendants.

Flats.[2]  Ms. Pitts and Ms. Brever alleged they were labelled "whistleblowers" for cooperating with the FBI, which was investigating possible environmental crimes at Rocky Flats.  Plaintiffs claim they thereafter were harrassed, intimidated, threatened, subjected to unsafe working conditions, deterred from testifying before a grand jury investigating possible crimes at Rocky Flats, and retaliated against after testifying.  On review of a motion to dismiss for failure to state a claim, we accept all well-pleaded facts in the complaint as true.  *Williams v. Meese,* 926 F.2d 994, 997 (10th Cir.1991).  The facts surrounding this appeal, as asserted in the complaint, are as follows.

The Rocky Flats facility, located near Golden, Colorado, and operated under contract with the United States Department of Energy, produces and reprocesses detonation devices or "triggers" for nuclear warheads using materials including plutonium.  The facility's activities include, among other things, storing, shipping, and incinerating plutonium-laden waste materials generated at Rocky Flats and other facilities.  Rockwell International Corporation operated Rocky Flats from 1975 through 1989.  EG & G has operated Rocky Flats since January 1, 1990.  Ms. Pitts worked as a Chemical Operator at Rocky Flats from February 1984 until April 1991, when she resigned.  Jacqueline Brever worked as a Chemical Operator at Rocky Flats from January 1984 until April 1991, when she also resigned.

Numerous agents of the FBI raided Rocky Flats on June 6, 1989 to investigate the illegal operation of an incinerator in Building 771 during 1988 and 1989.  Ms. Pitts and Ms. Brever realized they had worked together removing thermally hot residue from the incinerator in question during the relevant time period and became concerned that they may have unwittingly participated in illegal activity.  At a staff meeting attended by Ms. Pitts, Ms. Brever, and several of the named individual defendants on June 12, Ms. Pitts was told not to cooperate with the FBI investigation.  She stated that she would not lie or cover up anything if interviewed by the FBI.

The following day, defendants refused Ms. Pitts and Ms. Brever access to documentation that would confirm the dates and nature of their duties with respect to the Building 771 incinerator.

On the afternoon of June 13, Rockwell called an employee meeting, attended by Ms. Pitts and Ms. Brever.  William Weston, Rockwell's Manager of Plutonium Operations, stated in connection with the ongoing FBI raid and investigation that "[w]histleblowers will be dealt with severely and completely.  Everyone knows the incinerator did not run between October 7, 1988 and February 25, 1989."  Aplt. App. at 4, ¶ 21.  On June 14, the FBI initiated contact with Ms. Pitts and Ms. Brever.  Later that same day, defendant Ricky Carlson requested that plaintiffs report to the legal department of Rockwell to be interviewed by representatives of Rockwell.  They refused to do so without legal representation.  When they told Mr. Carlson that they intended to report his request to the FBI, he forbade them from doing so.

Ms. Pitts and Ms. Brever asserted in their complaint that on June 15 defendants began "a campaign of harassment, intimidation, terror, physical attack upon the person and property of plaintiffs, and other cowardly acts, intended to coerce plaintiffs into falsifying, concealing, or covering up material facts and information which the FBI, and later the United States Department of Justice, was seeking directly from plaintiffs."  Aplt. App. at 5, ¶ 25.  From June 15 to September 14, defendants subjected Ms. Pitts and Ms. Brever to acts including, among other things, direct threats of harm;  publication of false charges that they were whistleblowers;  repeated assignment to onerous or excessively hazardous work duties;  intentional bypassing of required safety procedures affecting them;  intentional delay in responding to incidents where Ms. Pitts and Ms. Brever were contaminated with radioactive material and in need of monitoring and decontamination;  sexually explicit and insulting remarks;  and sexually harassing body contact.

---

**2.**  Although Ms. Brever was a co-plaintiff in the suit below, she is not a party to this appeal.  She is mentioned only to give context to the pattern of harassment alleged by Ms. Pitts.

On September 14, Ms. Pitts and Ms. Brever "were intentionally exposed to radiation due to deliberate sabotage whereby defendants caused a hole to be made in a newly installed glove in a glovebox," *id.* at 7, ¶ 26, used to handle highly contaminated radioactive material. When Ms. Pitts and Ms. Brever encountered defendants Donald Bell and Michael Evans later that day, the two men were laughing about the contamination incident and stated, "That's what you get for making waves." *Id.* Ms. Pitts and Ms. Brever allege that the harassment and intimidation continued from September 15 onward with the consent of Rockwell. On October 12, the United States Attorney for Colorado granted Ms. Pitts and Ms. Brever immunity from prosecution for any crimes committed at Rocky Flats and ordered them to testify before the federal grand jury in Denver. The harassment and intimidation continued thereafter and included, among other things, ignoring reports by Ms. Pitts and Ms. Brever of hazardous working conditions; demanding to know the nature and extent of their communications with the FBI; and entering their residences when no one was at home to leave signs of entry for purposes of intimidation.

On October 23 and 24, Ms. Brever testified before the grand jury in Denver. Ms. Pitts gave testimony on October 25. During the days of Ms. Brever's testimony, Ms. Pitts noticed a marked increase in hostility from defendants, including comments containing vulgar and obscene language. Ms. Pitts had been working in the "hot side" of Rocky Flats[3] and her requests for a transfer out of this area went unheeded. At the express request of the FBI and the United States Department of Justice, Rockwell allowed Ms. Pitts and Ms. Brever to be transferred from the "hot side" of the plant to the "cold side" on October 30. Several individual defendants jeered and heckled Ms. Pitts and Ms. Brever as they were cleaning out their lockers, and defendants Michael Evans and Donald Bell proclaimed, "Bitches! Why don't you just quit." *Id.* at 9, ¶ 31.

After the October 30 transfer to the "cold side" of Rocky Flats, Ms. Pitts and Ms. Brever continued to experience harassment including the following: harassing phone calls and mail; deliberate interference with previously filed worker compensation claims and scheduled medical treatment; intentional illegal wiretapping of their home telephones; vandalizing vehicles belonging to Ms. Pitts and her husband; shooting out the windows of Ms. Pitts' daughter's car when it was parked at Ms. Pitts' home, and firing gunshots in the yard of Ms. Pitts' home; parking conspicuously in front of Ms. Pitts' home and then following her when she travelled in her car; attempted arson of Ms. Pitts' home; attempted breaking and entering of Ms. Pitts' home; an attempt to kill or seriously injure Ms. Pitts by sabotaging her vehicle; and a threat by defendant Rick Williams to "'hunt [plaintiffs] down and kill them' if plaintiffs caused defendant Rick Williams to lose his job." *Id.* at 10–11, ¶ 35.

On April 17, 1991, Ms. Pitts resigned her position as Chemical Operator at Rocky Flats because of unbearable work conditions, harassment, and for fear of her safety and the safety of her family. Ms. Brever resigned one week later.

Ms. Pitts and Ms. Brever filed suit in October 1991 alleging that the Rockwell defendants conspired to deter testimony and that both the Rockwell defendants and the EG & G defendants conspired to retaliate for giving testimony[4] and failed to prevent such conspiracies, all in violation of 42 U.S.C. §§ 1985(2) and 1986.[5] They also alleged the

---

**3.** The complaint does not specifically define what is meant by the "hot side" of the plant. However, in context it is clear that the "hot side" refers to that portion of the plant where there is the potential for contact with and contamination from radioactive material.

**4.** Ms. Pitts and Ms. Brever conceded below that the conspiracy-to-deter-testimony claim under section 1985(2) is against Rockwell defendants only because EG & G defendants were not involved in operating the Rocky Flats facility until after Ms. Pitts and Ms. Brever testified. Aplt. App. at 368.

**5.** Under section 1986, persons who have knowledge of a section 1985 conspiracy and fail to exercise any power they might have to prevent it may be liable to the party injured by the conspiracy. 42 U.S.C. § 1986.

following state law tort claims: (1) outrageous conduct; (2) intentional harassment and intimidation; (3) wrongful discharge; (4) intentional infliction of emotional distress; and (5) conspiracy to commit civil wrongs and torts.

Rockwell defendants filed a motion to dismiss or, in the alternative, a motion for summary judgment. EG & G defendants filed a motion to dismiss or, in the alternative, a motion for a more definite statement. The district court granted both defendants' motions to dismiss. The court dismissed the section 1985(2) conspiracy claims on the grounds that Ms. Pitts and Ms. Brever failed to allege with sufficient particularity the elements of the conspiracy claims. The court dismissed the section 1986 claim because it is dependent on the section 1985(2) claim.

With respect to the state law claims, the court treated the wrongful discharge claim as two separate claims: constructive discharge and retaliatory discharge. It dismissed the retaliatory discharge and state law conspiracy claims for failure to state a claim. It dismissed the constructive discharge, outrageous conduct, and intentional infliction of emotional distress claims because it held that they required, in large part, interpretation of the governing collective bargaining agreement (CBA) and were therefore preempted by section 301 of the LMRA. The court held that to the extent certain allegations did not require interpretation of the CBA, they were too vague to state a valid claim under Colorado law. The court dismissed the intentional harassment and intimidation claim because "[p]laintiffs concede[d] that this claim does not exist under Colorado law." [6]

Only Ms. Pitts appeals from the district court's decisions. After reviewing the record and the applicable law, we reverse the district court's dismissal of Ms. Pitts' federal conspiracy claims. We also reverse the court's dismissal of the state law tort claims.

## II.

The first issue on appeal is whether the district court erred by dismissing, as a matter of law, Ms. Pitts' federal conspiracy claims. "[T]he sufficiency of a complaint is a question of law which we review *de novo*." *Ayala v. Joy Mfg. Co.*, 877 F.2d 846, 847 (10th Cir.1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir.1986). "We will uphold a dismissal [under Fed. R.Civ.P. 12(b)(6) ] only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1115 (10th Cir.1991). In performing our review, we accept all well-pleaded allegations as true and construe them in the light most favorable to Ms. Pitts. *Williams*, 926 F.2d at 997 (citation omitted). We note that " '[t]he Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim.' " *Morgan*, 792 F.2d at 978 (quoting *Auster Oil & Gas Inc. v. Stream*, 764 F.2d 381 (5th Cir.1985)).

Before we address Ms. Pitts' substantive claims, we must first decide whether she, as a witness testifying before a federal grand jury, has standing to sue under 42 U.S.C. § 1985(2). In *Langley v. Adams County*, 987 F.2d 1473, 1481–82 (10th Cir.1993), we addressed this issue and held that witnesses do have standing under section 1985(2). The plain language of the statute supports our conclusion in *Langley*. Section 1985(2) creates a cause of action against those who "conspire to deter, by force, intimidation, or threat, any party *or witness*" from attending or testifying in a federal court. 42 U.S.C. § 1985(2) (emphasis added). We hold that Ms. Pitts has standing to bring an action under section 1985(2). [7]

---

6. Ms. Pitts does not appeal the district court's dismissal of her intentional harassment and intimidation claim and we do not address it on appeal.

7. Defendants suggest that the remedial portion of the statute located in section 1985(3) limits standing to parties only. The language relied on by defendants provides that "in any case of con-

spiracy set forth in [section 1985] ... the *party* so injured or deprived may have an action for the recovery of damages ... against any one or more of the conspirators." 42 U.S.C. § 1985(3) (emphasis added). Unlike defendants, we do not read the word "party" so literally as to mean "named party to an action," especially where the preceding portion of the statute specifically iden-

There are four distinct clauses in section 1985(2), each creating a distinct cause of action. *See Wright v. No Skiter, Inc.,* 774 F.2d 422, 425 (10th Cir.1985). Proceedings before the district court below clarified that Ms. Pitts attempted to assert a claim for conspiracy to deter testimony against all defendants except EG & G, *see* Aplt. App. at 368, and a second claim against all defendants for conspiracy to retaliate against her because of her testimony. Ms. Pitts asserts that her complaint alleged facts with sufficient particularity to satisfy both the deterrence and the retaliation claims, and that, in any event, the court should have granted her leave to amend her complaint. Ms. Pitts also argues that "actual deterrence" of testimony is not necessary to state a deterrence claim. Rockwell defendants and EG & G defendants contend dismissal was proper because Ms. Pitts failed to allege a conspiracy adequately for either a deterrence or retaliation claim and because Ms. Pitts was never "actually deterred" from testifying.

### A. *Section 1985(2) Deterrence Claim*

Ms. Pitts claims that the Rockwell defendants and the individual defendants conspired to deter her testimony. This claim requires that "two or more persons in any State or Territory *conspire to deter,* by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully." 42 U.S.C. § 1985(2) (emphasis added). The elements of a deterrence claim under section 1985(2) are (1) a conspiracy, (2) to deter testimony by force or intimidation, and (3) injury to the plaintiff. *See Rutledge v. Arizona Bd. of Regents,* 859 F.2d 732, 735 (9th Cir.1988).

The first element, a conspiracy, "requires the combination of two or more persons acting in concert." *Abercrombie v. City of Catoosa,* 896 F.2d 1228, 1230 (10th Cir.1990). A plaintiff must allege, "either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants." *Id.* at 1231. "[T]he conspiracy must be one that has the requisite statutory purpose," namely to deter a party or witness from attending or testifying freely, fully, and truthfully. *Brown v. Chaffee,* 612 F.2d 497, 502 (10th Cir.1979). While more than mere conclusory allegations are required to state a valid claim, "the nature of conspiracies often makes it impossible to provide details at the pleading stage and ... the pleader should be allowed to resort to the discovery process and not be subject to dismissal of his complaint." 5 C. Wright & A. Miller, *Federal Practice & Procedure,* § 1233, at 257 (2d ed. 1990).

Ms. Pitts' complaint clearly alleges actions by two or more persons acting in concert. Rockwell, acting through William Weston, and the individual defendants allegedly engaged in a series of activities ranging from direct threats of harm and intentional bypass of required safety procedures to deliberate sabotage and sexually harrassing body contact. Aplt. App. at 5–7. Defendants invoke the "intracorporate conspiracy doctrine," asserting that Ms. Pitts failed to allege a conspiracy because a corporation cannot conspire with its corporate agents. This doctrine was first developed in the antitrust context, *see Nelson Radio & Supply v. Motorola,* 200 F.2d 911 (5th Cir.1952), *cert. denied,* 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356 (1953), and we subsequently applied it to related civil conspiracies, *see Zelinger v. Uvalde Rock Asphalt Co.,* 316 F.2d 47, 51–52 (10th Cir.1963) (applying Colorado law holding that a corporation and its employees cannot conspire to tortiously interfere with and bring about the breach of a distributorship agreement). We have yet to determine whether the doctrine precludes intracorporate conspiracies in civil rights actions. A majority of other circuits have addressed the issue with divergent results. Five circuits have extended the intracorporate conspiracy doctrine to actions under sections 1983 and

---

tifies witnesses as protected persons. Moreover, defendants' suggested limitation on standing would effectively emasculate section 1985(2) in the context of this case. Here, we have a federal grand jury proceeding where the only "party,"

according to defendants' interpretation of the statute, would be the United States. We disagree with such a narrow reading, and to the extent that defendants cite cases to the contrary we hold otherwise.

1985,[8] while four others have severely limited or questioned the applicability of the doctrine in the civil rights context.[9] We agree with the latter group of courts that the doctrine, designed to allow one corporation to take actions that two corporations could not agree to do, should not be construed to permit the same corporation and its employees to engage in civil rights violations. *See Stathos v. Bowden,* 728 F.2d 15, 21 (1st Cir.1984) (per Breyer, J.) ("Where 'equal protection' is at issue ... one cannot readily distinguish in terms of harm between the individual conduct of one enterprise and the joint conduct of several."). "In these situations, the action by an incorporated collection of individuals creates the 'group danger' at which conspiracy liability is aimed, and the view of the corporation as a single legal actor becomes a fiction without a purpose." *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 603 (5th Cir.1981).

Moreover, even those circuits that extend the doctrine to civil rights cases would not apply it here. Courts have recognized an exception where an officer or agent has " 'an independent personal stake in achieving the corporation's illegal objective.' " *Buschi v. Kirven,* 775 F.2d 1240, 1252 (4th Cir.1985) (quoting *Greenville Publishing Co. v. Daily Reflector, Inc.,* 496 F.2d 391, 399 (4th Cir. 1974)); *see also Garza v. City of Omaha,* 814 F.2d 553, 556 (8th Cir.1987). It is clear that Ms. Pitts' co-workers did have a personal stake in seeking first to deter and later to retaliate for her testimony before the grand jury. By testifying to the illegal operation of the incinerator at Rocky Flats, Ms. Pitts and Ms. Brever implicated the employees in a criminal activity. Also, statements allegedly made by defendants indicate that they feared plaintiffs' testimony would lead to the plant's closing and the loss of defendants' jobs. *See* Aplt. App. at 186, ¶ 5; *id.* at 11, ¶ 35(*l* ). Ms. Pitts' allegations, therefore, suggest that the employees were acting for their own personal purposes and not blindly executing corporate policy. In doing so, they became "independent actors[ ] who can conspire with the corporation." *Dussouy,* 660 F.2d at 603.

■ Defendants suggest that the complaint fails to state a claim for conspiracy because it does not allege communication between the alleged conspirators. We disagree. Ms. Pitts must allege facts sufficient "to give rise to the inference that [defendants] conspired." *Abercrombie,* 896 F.2d at 1231. In *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the Supreme Court held that, even though the petitioner had no knowledge of an agreement between the alleged conspirators, "the sequence of events" alleged were sufficient to allow a jury to "infer from the circumstances that the [conspirators] had a 'meeting of the minds.' " *Id.* at 157, 158, 90 S.Ct. at 1608, 1609.

■ We believe Ms. Pitts alleges sufficient facts to create an inference of a "meeting of the minds" of the conspirators. She alleges, for example, that on June 13, only seven days after the FBI's initial raid on Rocky Flats, Rockwell's Manager of Plutonium, William Weston, called a meeting of all the employees of Building 771, including Ms. Pitts and Ms. Brever.[10] Referring to the ongoing FBI investigation, he stated, "Whistleblowers will be dealt with severely and completely. Everybody knows the incinerator did not run between October 7, 1988 and February 25, 1989." Aplt. App. at 4, ¶ 21.

---

8. *Hartman v. Board of Trustees,* 4 F.3d 465, 469–70 (7th Cir.1993); *Hull v. Cuyahoga Valley Bd. of Educ.,* 926 F.2d 505, 509 (6th Cir.), *cert. denied,* 501 U.S. 1261, 111 S.Ct. 2917, 115 L.Ed.2d 1080 (1991); *Buschi v. Kirven,* 775 F.2d 1240, 1252 (4th Cir.1985); *Cross v. General Motors Corp.,* 721 F.2d 1152, 1156 (8th Cir.1983), *cert. denied,* 466 U.S. 980, 104 S.Ct. 2364, 80 L.Ed.2d 836 (1984); *Herrmann v. Moore,* 576 F.2d 453, 459 (2d Cir.), *cert. denied,* 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 679 (1978).

9. *Stathos v. Bowden,* 728 F.2d 15, 20–21 (1st Cir.1984); *United States v. Hartley,* 678 F.2d 961, 970–72 (11th Cir.1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983); 459 U.S. 1183, 103 S.Ct. 834, 74 L.Ed.2d 1027 (1983). *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 603 (5th Cir.1981); *Novotny v. Great Am. Fed. Sav. & Loan,* 584 F.2d 1235, 1256–59 (3d Cir.1978), *vacated on other grounds,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979).

10. This meeting was also attended by almost all of the individual defendants named as conspirators. *See* Aplt. Br. at 4.

The next day, defendant Ricky Carlson, another Rockwell employee, forbade Ms. Pitts from going to the FBI, and soon thereafter a period of harassment and intimidation began. We think this sequence of events is sufficient to support an inference of a "meeting of the minds" between Rockwell and the individual defendants "that action could and should be taken against whistleblowers, Ms. Brever and Ms. Pitts in particular, without fear of reprimand or restraint by Rockwell."[11] Aplt. Br. at 30.

We agree with defendants' assertions that Ms. Pitts' complaint is inartfully drawn and fails in some instances to allege specific details, such as the time, location, or the capacity or identity of certain individuals involved with specific instances of the alleged conduct. But "the nature of conspiracies often makes it impossible to provide details at the pleading stage," 5 C. Wright & A. Miller, *Federal Practice & Procedure*, § 1233, at 257 (2d ed. 1990), and "[g]ranting defendant's motion[s] to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice," *Morgan*, 792 F.2d at 978. When viewed in the light most favorable to Ms. Pitts, we think the complaint here meets the minimum requirements for pleading a conspiracy.

The deterrence element of Ms. Pitts' 1985(2) claim is also satisfied. Relying on *Brown v. Chaffee*, 612 F.2d 497, 502 (10th Cir.1979); Rockwell defendants and the individual defendants claim that the deterrence element requires "actual deterrence," and that Ms. Pitts cannot satisfy this element because she did in fact testify before the federal grand jury. We are not persuaded.

In *Brown*, a deputy sheriff sought damages under section 1985(2) because the sheriff and their joint attorney conspired to prevent the deputy from presenting an effective defense to a civil rights action. The deputy asserted that he was deterred from testifying freely and fully because his attorney determined the content of his testimony and the attorney failed to ask him the right questions when he was on the witness stand. *Id.* at 502. The court held that the plaintiff failed to state a deterrence claim because he did not allege a conspiracy "directly affecting . . . the act of testifying as a witness." *Id.* Rather, the plaintiff merely alleged that his attorney "did not ask him the right questions to present an effective defense," a claim the losing party in almost every case could make. *Id.* *Brown* did not hold that a party who actually testifies has no claim because she was not actually deterred. Instead, *Brown* held that an attorney's failure to ask "the

11. Rockwell defendants contend that they could not have conspired to deter Ms. Pitts from testifying until after she was ordered to testify on October 12 and thereby became a "witness" to federal court action as required by section 1985(2). *See* Rockwell Br. at 8. Rockwell interprets the word "witness" too narrowly. As one court has stated,

> The statute does not define the term "witness." However, Congress' purpose, which was to protect citizens in the exercise of their constitutional and statutory rights to enforce laws enacted for their benefit, is achieved by interpreting the word "witness" liberally to mean not only a person who has taken the stand or is under subpoena but also one whom a party intends to call as a witness.

*Chahal v. Paine Webber, Inc.*, 725 F.2d 20, 24 (2d Cir.1984).

Rockwell also asserts that since the federal grand jury at which Ms. Pitts testified did not officially convene until August 1, 1989, allegations of conspiratorial acts prior to that date can not be considered because there was no court action. We find this argument unconvincing. Such a reading not only ignores the purposes behind the statute, but it would also encourage conspirators to take their most forceful actions against a witness or potential witness immediately before official action is taken on an impending case. In any event, Ms. Pitts argues that the conspiratorial acts committed prior to August 1 were part of an ongoing conspiracy to silence and deter her from cooperating with the FBI and testifying in the impending grand jury investigation. Aplt. Reply Br. at 18. The facts here support Ms. Pitts' view because the grand jury convened less than two months after the FBI first raided Rocky Flats and a mere six weeks after the alleged conspiratorial acts began. On these facts, we think it fair to consider the actions taken by defendants prior to August 1. *See Shoultz v. Monfort of Colorado, Inc.*, 754 F.2d 318, 322 (10th Cir.1985) (suggesting plaintiffs' section 1985(2) claim would not have been dismissed if plaintiff had alleged that defendants conspired to deter him from bringing a suit *"which might be maintained* in the federal courts." (emphasis added)).

right questions" during that testimony does not constitute deterrence.

The purpose of section 1985(2) is "to protect citizens in the exercise of their statutory and constitutional rights." *Chahal,* 725 F.2d at 24. This purpose would clearly be undermined if defendants who, despite their best efforts, were unsuccessful in keeping a witness off the stand could avoid the consequences of their actions. We therefore hold that, under the facts alleged here, the deterrence element of Ms. Pitts' claim is satisfied even though she actually testified before the grand jury.

Finally, it is clear that the facts alleged here satisfy the injury requirement of a deterrence claim. Accordingly, because the complaint sufficiently alleges facts showing a conspiracy to deter Ms. Pitts by force or intimidation from testifying before the grand jury and such conspiracy caused her to suffer injury, she has stated a valid deterrence claim under section 1985(2). The district court erred in dismissing this claim.

## B. *Section 1985(2) Retaliation Claim*

Ms. Pitts testified before the federal grand jury on October 25, 1989. In her second claim under section 1985(2), she asserts a conspiracy to retaliate against her for testifying before the grand jury against all defendants, including Rockwell which operated Rocky Flats until December 31, 1989. The incidents alleged after October 25 include, among other things, harassing phone calls at home and work; harassment from two co-workers who jeered Ms. Pitts and Ms. Brever and stated, "Bitches! Why don't you just quit!"; opening Ms. Pitts' confidential mail; deliberately interfering with previously filed worker compensation claims and medical treatment scheduled therefor; harassing mail; and more serious allegations such as firing gunshots in her yard, shooting out the windows of her daughter's car when it was parked at Ms. Pitts' home and attempted arson of her home. *See* Aplt. App. at 9–10. Ms. Pitts alleges that Rockwell and EG & G "did, authorize, ratify or condone the acts of the individual defendants, either by virtue of participation in said acts, failure to take proper steps to prohibit said acts from occur-

ring, or failure to reprimand and discipline the employees involved." *Id.* at 11.

To succeed on a retaliation claim, Ms. Pitts must allege a conspiracy, a nexus between the conspiracy and her grand jury testimony, and injury on account of having testified. *See Deubert v. Gulf Fed. Sav. Bank,* 820 F.2d 754, 758 (5th Cir.1987). As we noted above, Ms. Pitts alleges a sequence of events sufficient to permit an inference of a "meeting of the minds" of the conspirators. The nexus between the conspiracy and the grand jury proceeding is also clear, as the conspiratorial acts that began soon after the FBI raid continued and became progressively more severe after Ms. Pitts testified. As with the deterrence claim, defendants do not argue that Ms. Pitts fails to allege injury.

In summary, the district court erred when it dismissed Ms. Pitts' conspiracy claims under section 1985(2) because Ms. Pitts has sufficiently alleged the required elements of her claims. "Because plaintiff asserts a valid claim under § 1985(2), [her] reliance on § 1986 is also valid." *Wright,* 774 F.2d at 426. The district court's dismissal of Ms. Pitts' claims under sections 1985(2) and 1986 is reversed.

## III.

Along with her federal claims under sections 1985(2) and 1986, Ms. Pitts asserted state law tort claims for conspiracy, constructive discharge, retaliatory discharge, outrageous conduct, and intentional infliction of emotional distress. Ms. Pitts appeals the district court's dismissal all these claims. We deal with each in turn.

The district court dismissed Ms. Pitts' state law conspiracy claim for the same reasons it dismissed her section 1985(2) conspiracy claims, namely that the allegations were insufficient to meet the elements of a conspiracy. For the reasons we noted above with respect to the section 1985(2) claims, we hold that the allegations in the complaint are sufficient to survive a motion to dismiss. *See Pittman v. Larson Distrib. Co.,* 724 P.2d 1379, 1390 (Colo.App.1986) (under Colorado law, a corporation and its employees may

constitute a civil conspiracy if employees are acting as individuals for their individual advantage). The district court's dismissal of this claim is reversed.

The court dismissed the constructive discharge, retaliatory discharge, outrageous conduct, and intentional infliction of emotional distress claims on the alternative grounds of preemption under section 301 of the LMRA, 29 U.S.C. § 185, or for failure to state a claim. *See* Aplt. App. at 314–15, 316, 318. Defendants argue that these claims are preempted because they require interpretation of the CBA. Ms. Pitts contends that these claims are independent of the collective bargaining agreement, and that in any event, she should have been granted the opportunity to amend any vague allegations to show their independence from the CBA. Because we agree that the district court should have permitted Ms. Pitts to amend her complaint, we do not reach the preemption issue.

■ Defendants' assertions that Ms. Pitts should not be granted leave to amend because she failed to file a formal motion would normally succeed. *See Glenn v. First Nat'l Bank*, 868 F.2d 368, 371 (10th Cir. 1989). The unique circumstances of this case, however, warrant a remand to permit amendment of the pleadings. The record before us conclusively shows that Ms. Pitts possessed particular grounds for amending her complaint and proceeded under a legitimate understanding with the other parties and the court that she should wait until a designated time to exercise her right to amend.

Ms. Pitts filed her complaint in state court on October 9, 1991. On November 8, prior to answering the complaint, defendants removed the action to the United States District Court, and ten days later they filed their motions to dismiss. On November 27, the district court entered an Order for Scheduling Conference which included a direction that the parties specify a time "to amend the pleadings." Aplt. App. at 70. In a scheduling conference report filed by Ms. Pitts, the parties all proposed a time frame for amendment of pleadings. *Id.* at 73. Ms. Pitts proposed February 3, 1992, as the last day to amend, and EG & G defendants pro-

posed thirty days from the ruling on the motion to dismiss. The record reflects that in late December the court expected that the time frame for amending the pleadings would be set at the scheduling conference, to be held after the rulings on the dispositive motions. *See id.* at 540.

During December, Ms. Pitts and co-plaintiff Ms. Brever served document requests and a deposition notice on Rockwell. Ms. Pitts contends that these discovery efforts, directed to key evidence supporting her allegations, would have permitted her to allege with more specificity the details of her claims.

On January 14, 1992, the judge determined that the action was not sufficiently related to a case already on his docket, and the case was reassigned to another judge. *Id.* at 540. Thirteen days later, Ms. Pitts and Ms. Brever filed their combined response to Defendants' Motions to Dismiss or for Summary Judgment. *Id.* at 76–180. The response asserted that the plaintiffs stood "ready to amend their complaint to provide more detail . . . should the court so order," *id.* at 92–93, and requested "leave to conduct discovery regarding issues raised in the motions, or to amend their complaint per the court's guidelines." *Id.* at 124. Immediately thereafter, the various defendants filed motions to stay all discovery, which, under the court's local rules, automatically stayed any and all discovery until a ruling on the motions. *Id.* at 200–06. The court granted defendants' motions at the scheduling conference on March 19. *Id.* at 301.

Although the scheduling conference was not recorded, the record reflects that the parties did discuss the timing of a possible amendment to the complaint. At the June 12 motions hearing, defendants claimed that the plaintiffs had declined to replead at the March 19 conference. *Id.* at 394. Ms. Pitts' counsel denied this, noting that "it was agreed by all present [at the March 19 conference] that because major legal issues had been presented and briefed . . . those matters should first be heard and decided prior to any repleading." *Id.* at 396. The court minutes, the only objective report of the discussion at the March 19 conference, are

ambiguous. An entry in the minutes provided that "[a]ny person named in caption [and] not listed in any allegations are [sic] dismissed, Pltf has leave to amend." *Id.* at 301. After the discussion, however, the court directed the clerk to strike this entry. *Id.*

During the June 12 hearing on the motions to dismiss, plaintiffs informed the court that they had new or additional information which they could, if the court permitted, include in the complaint. The new or additional information included evidence of possible tampering with the steering mechanism on Ms. Brever's car, *id.* at 347, completely detailed allegations of the numerous incidents of intimidation and harassment, *id.* at 350–51, and specific allegations of how and when the employer corporations knew of the alleged actions of plaintiffs' co-workers, *id.* at 389–92. When plaintiffs' counsel asked the court to clarify its position on the sufficiency of the allegations of conspiracy and retaliation, the court replied, "Well, I'd .have to wait until dates and names are provided and see if defendants—I don't do things sua sponte. I'm just indicating—I know what your position is." *Id.* at 392. Ms. Pitts' counsel also requested the opportunity to re-frame the complaint respecting the issue of pendent state tort claims not preempted by section 301 of the LMRA. *Id.* at 424. On August 31, the court granted defendants' motions to dismiss without permitting leave to amend. *Id.* at 302.

Ms. Pitts has the right to amend her pleadings once at any time prior to the filing of a responsive pleading. Fed.R.Civ.P. 15(a). Because defendants' motions to dismiss or for summary judgment were not responsive pleadings, Ms. Pitts could have amended her complaint prior to dismissal without requesting or receiving leave of the court. *See Zaidi v. Ehrlich,* 732 F.2d 1218, 1219–20 (5th Cir.1984) (motion for summary judgment not responsive pleading); *Glenn,* 868 F.2d at 370 (motion to dismiss not responsive pleading). The circumstances of this case, however, suggest that Ms. Pitts was willing and able to amend her complaint but postponed the amendment because of assurances by the court and agreements with the other parties. Unlike the plaintiff in *Glenn* whose request

for leave to amend was "a mere 'shot in the dark,'" Ms. Pitts demonstrated that she had "particular grounds for [her] request" but was waiting for what she had been led to believe was the proper time to present them. *Id.*

Because Ms. Pitts could have amended her complaint as a matter of right, the district court was not required to grant or deny leave to amend prior to dismissal. *See Glenn,* 868 F.2d at 370. Consequently, the court could not have committed error in this regard. *See id.* The court did, however, have authority to dismiss the case with or without leave to amend the complaint. "Ideally, if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." 6 C. Wright & A. Miller, *Federal Practice & Procedure,* § 1483, at 587 (2d ed. 1990); *see also United States v. McGee,* 993 F.2d 184, 187 (9th Cir.1993). We do not require district courts to engage in independent research or read the minds of litigants to determine if information justifying an amendment exists. In situations such as this, however, where the record clearly reflects that the non-moving party possesses additional facts necessary for an amendment and where that party has repeatedly expressed a willingness to amend, the court should reserve to the non-movant leave to amend upon dismissal of the action. We hold that the district court erred by dismissing Ms. Pitts' complaint without affording her the opportunity to amend it.

Furthermore, because we remand this case on the grounds that Ms. Pitts did state claims under sections 1985(2) and 1986, and because defendants still have not filed a responsive pleading, Ms. Pitts remains entitled to her one amendment as a matter of right. *See Schreiber Distrib. v. Serv–Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986) ("Neither the filing nor granting of [a motion to dismiss] before answer terminates the right to amend"). Ms. Pitts is thus free to amend her complaint on remand.

We REVERSE the district court's dismissal of Ms. Pitts' federal conspiracy and

state law tort claims and REMAND the case for further proceedings.