

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-26-1999

# Heffernan v. Hunter

Precedential or Non-Precedential:

Docket 98-1749

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Heffernan v. Hunter" (1999). *1999 Decisions.* Paper 238.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/238

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 26, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-1749

JOHN J. HEFFERNAN,
　　　　Appellant

v.

ROBERT W. HUNTER, Prisoner #CV9408;
BOCHETTO & LENTZ, P.C.; GEORGE BOCHETTO, ESQ.

APPEAL FROM THE UNITED STATES
DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 97-cv-06041)
District Judge: Honorable Norma L. Shapiro

Argued: April 27, 1999

Before: MANSMANN, WEIS, and GIBSON,*
Circuit Judges.

(Filed: August 26, 1999)

_____

* The Honorable John R. Gibson, United States Circuit Judge for the
United States Court of Appeals for the Eighth Circuit, sitting by
designation.

Alan B. Epstein, Esquire
 (ARGUED)
Thomas Rapp, Esquire
Jablon Epstein, A Professional
 Corporation
The Bellevue, Ninth Floor
Broad Street at Walnut
Philadelphia, PA 19102-3803

Attorneys for Appellant

Andrew Teitelman, Esquire
Suite 210
3993 Huntingdon Pike
Huntingdon Valley, PA 19006

Attorney for Appellee Hunter

H. Robert Fiebach, Esquire
Thomas G. Wilkinson, Jr.,
 Esquire (ARGUED)
Christopher D. McDemus, Esquire
Cozen and O'Connor, P.C.
The Atrium
1900 Market Street
Philadelphia, PA 19103

Attorneys for Appellees
Bochetto & Lentz and Bochetto

OPINION OF THE COURT

WEIS, Circuit Judge.

In this case, defendants sought to intimidate plaintiff, a potential witness in federal court, by filing an allegedly frivolous lawsuit against him and using it to generate unfavorable publicity. We hold that plaintiff has standing to seek damages for that conduct under the anti-conspiracy sections of the Civil Rights Act of 1871. However, we also hold that because defendants acted within the attorney-client relationship, they cannot be considered conspirators. On that basis, we will affirm the dismissal by the District Court.

Plaintiff John J. Heffernan, an official with the Securities and Exchange Commission, was assigned in January 1994 to investigate possible insider trading violations growing out of a proposed bank merger. Defendant Robert W. Hunter came under scrutiny for the stock transactions he conducted during the relevant time.

In January 1994, Hunter's five-year relationship with his paramour Joanne Kelly ended when she discovered that he had molested her eleven year-old daughter. The following month, criminal charges were lodged against Hunter in state court.

On February 7, 1994, Kelly advised a county detective that she had information about Hunter's insider trading activities. The detective introduced her to Heffernan on February 24, 1994, who then interviewed her in connection with the SEC investigation. In the following months, Kelly and Heffernan began an intimate relationship, and were married in May 1995. Recognizing the conflict between his personal situation and his official duties, in August 1994 Heffernan requested to be relieved from his assignment to the Hunter investigation. The SEC then transferred the case to a different regional office.

Some weeks after bringing criminal charges against Hunter, Kelly and her daughter filed a civil suit in state court for damages caused by the molestation. The Kellys' lawyers demanded $2 million from Hunter to settle the suit.

In preparation for his defense, Hunter and his attorney hired a detective who reported evidence of Heffernan's and Kelly's intimate relationship during July of 1994. The surveillance produced a videotape showing Heffernan and Kelly kissing, his car parked overnight in her garage, and Kelly leaving and meeting Heffernan at the train station.

On August 29, 1994, defendant George Bochetto and his law firm, defendant Bochetto & Lentz, filed suit on Hunter's behalf in the United States District Court for the Eastern District of Pennsylvania. The complaint alleged that Heffernan had caused Kelly to leave Hunter and to falsely accuse him of child molestation in an attempt to extort money through a civil suit. Moreover, Hunter alleged that Heffernan had supplied Kelly with financial information

3

obtained from the SEC investigation to enhance her prospects for a large settlement in her civil suit. Hunter also sought to halt the SEC investigation.

The very next day, a local television station broadcasted portions of the surveillance videotape and interviewed Bochetto. He said of Heffernan, "[r]ather than take her [Kelly's] statement and go on with the investigation, he [Heffernan] took her statement and decided he wanted to stay for the night . . . It's literally the equivalent of the law enforcement agent jumping into your wife's bed, and prosecuting you from it . . . He starts sharing with her information which we believe she is now using to demand two million dollars of Mr. Hunter to settle an alleged molestation case in Montgomery County."

Defendants also hired a publicist who prepared and distributed press releases describing the material in Hunter's complaint. This prompted newspaper coverage with lurid descriptions such as "sex and million dollar business scandal" (The Reporter (N. Penn.), Sept. 1, 1994), "a bizarre sex-and-business plot worthy of novelist Raymond Chandler" (Phil. Inq., Aug. 31, 1994), and others.[1]

The District Court entered summary judgment in Hunter's case in favor of Heffernan on September 26, 1996, following the previous entry of a similar order in favor of the other defendants SEC, and Heffernan's supervisors. See Hunter v. Heffernan, Civ. A. 94-5340, 1996 WL 694237 (E.D. Pa. Sept. 26, 1996); Hunter v. Heffernan, 879 F. Supp. 494 (E.D. Pa. 1995).

Heffernan then turned around and sued Hunter, Bochetto and Bochetto's law firm on September 25, 1997 in the District Court for the Eastern District of Pennsylvania. Heffernan's complaint included claims under 42 U.S.C. SS 1985(1), 1985(2), and 1986, as well as a state law count. It is this action that presently concerns us.

_____

1. Some months later, on June 9, 1995, Hunter was convicted of molestation and sentenced to eight to fourteen years imprisonment. In May 1998, he pleaded guilty on several insider trading charges, and in April 1999, was sentenced to a term of incarceration. That conviction is presently on appeal.

The section 1985(2) count asserted that Hunter and Bochetto had conspired to file a frivolous lawsuit and disseminate defamatory information to the media to intimidate and punish Heffernan so as to affect his attendance and testimony as a witness against Hunter in federal court proceedings. The section 1985(1) claim cited the same acts as part of a conspiracy to impede Heffernan in the discharge of his duties as an officer of the United States, and to injure him in his person and property through harassment. Heffernan also asserted a violation of 42 U.S.C. S 1986 arising from the conspirators' failure to prevent the section 1985 violations. Finally, the complaint advanced a state statutory claim based on wrongful use of civil proceedings.

The District Court dismissed the complaint via two orders pursuant to Fed R. Civ. P. 12(b)(6). In the first, it held that witnesses did not have standing to bring an action under section 1985(2). Because the statute's remedy provision refers only to "the party so injured," reasoned the Court, a witness such as Heffernan had no right to sue under section 1985(2). As to the section 1985(1) count, the Court held that Hunter's filing of the lawsuit against Heffernan could not amount to "force, intimidation or threat." However, Heffernan was granted leave to amend the section 1985(1) claim with respect to the publicity campaign.

Heffernan amended but, in the second order, the Court dismissed the 1985(1) count because, under the circumstances, there could be no conspiracy between attorney and client. Bochetto and his firm, according to the Court, were acting on behalf of Hunter in defense of the SEC charges as well as the other criminal and civil matters pending against him at the time they launched the publicity campaign. Having failed to establish a predicate section 1985 claim, Heffernan's section 1986 claim failed as well. Finally, declining to exercise discretionary supplemental jurisdiction, the Court dismissed the remaining state-law claim without prejudice.

The plaintiff's appeal is limited to the District Court's alleged errors in: first, finding a lack of standing under 42 U.S.C. S 1985(2), and second, refusing to treat lawyer and client as conspirators.

5

A dismissal with prejudice under Rule 12(b)(6) produces a final order appealable under 28 U.S.C. S 1291, and one subject to plenary review. Malia v. General Elec. Co., 23 F.3d 828, 830 (3d Cir. 1994). All well-pleaded facts in the complaint and reasonable inferences are accepted as true. See id. The dismissal will be affirmed "only if it is certain that no relief can be granted under any set of facts which could be proved." Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171 F.3d 912, 919 (3d Cir. 1999) (internal quotations removed).

I.

Heffernan was not a party to the prospective SEC prosecution, but he was a potential and likely witness in those proceedings, both before a grand jury, and later in federal court. The issue is whether he, as a potential witness, has a right of action under the Civil Rights conspiracy statute.

The relevant portion of 42 U.S.C. S 1985(2), first part, along with the remedial provision in 42 U.S.C. S 1985(3), reads: "If two or more persons . . . conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein . . . or to injure such party or witness . . . or to influence. . . or to injure such juror . . . on account of any verdict, presentment, or indictment . . . the party so injured or deprived may have an action for the recovery of damages." Although section 1985(2) speaks to threats and deterrents against "any party or witness," the remedial language in section 1985(3) granting an action for damages refers only to "the party."[2]

_____

2. 42 U.S.C. S 1985(2) and the remedial portion of 42 U.S.C. S 1985(3) state in full:

> (2) Obstructing justice; intimidating party, witness, or juror

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and

6

Section 1985 derives mostly from the Civil Rights Act of 1871, ch. 22, S 2, 17 Stat. 13, and in lesser part not relevant to this appeal, from the Conspiracy Act of 1861, ch. 33, 12 Stat. 284. Almost Kantian in length and complexity, the revision that eventually became section 1985 is a paradigm of poor draftsmanship. In Brawer v. Horowitz, 535 F.2d 830, 837 (3d Cir. 1976), Judge Aldisert referred to "the perfidious syntax of S 1985(2)." In somewhat less colorful terms, the Supreme Court acknowledged that the "length and style" of the 1871 Act "make it somewhat difficult to parse." Kush v. Rutledge, 460 U.S. 719, 724 (1983).

The 1871 Act was codified pursuant to the Act of June 20, 1874, ch. 333, 18 Stat. 113-14, which charged Secretary of State Hamilton Fish with preparing the Revised Statutes of the United States. Brawer, 535 F.3d at 837-38 & n.16. Codified as R.S. S 1980, the statute now appears unchanged in Title 42. Id. at 837-38. A number of

_____

truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3) Depriving persons of rights or privileges

. . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

7

modifications were made to the statute during the codification process, but the Supreme Court, acknowledging these alterations, has concluded that "[t]he reclassification was not intended to change the substantive meaning of the 1871 Act." Kush, 460 U.S. at 724 & n.6.

To properly interpret section 1985, it is necessary to compare the original and codified texts. Both proscribe conspiracies to deter "any party or witness. " (emphasis added). However, codification brought unsettling changes to the remedy section, which now states that "the party so injured . . . may have an action for the recovery of damages." (emphasis added). Defendants argue that this language limits recovery to "parties" involved in litigation despite the fact that the original text was not so limited. It read that "the person so injured . . . may have and maintain an action for the recovery of damages." (emphasis added).

Not surprisingly, courts have differed as to whether a remedy is limited to parties, or extends to witnesses and jurors as well. The Supreme Court has taken a "firm" position on this issue, stating "We express no opinion regarding respondents' argument . . . that only litigants, and not witnesses, may bring S 1985(2) claims. We leave [that] issue[ ] for the courts below to resolve on remand." Haddle v. Garrison, 119 S. Ct. 489, 491 n.3 (1998).

By focusing on the codified language in isolation, two Courts of Appeals have concluded that relief is not available for "a mere witness." Rylewicz v. Beaton Services, Ltd., 888 F.2d 1175, 1180 (7th Cir. 1989); David v. United States, 820 F.2d 1038, 1040 (9th Cir. 1987).

On the other hand, in Brever v. Rockwell International Corp., 40 F.3d 1119 (10th Cir. 1994), the Court of Appeals for the Tenth Circuit refused to read the term " `party' so literally as to mean `named party to an action.' " Id. at 1125 n.7. To conclude otherwise would "emasculate" the statute, which specifically designates witnesses as " `protected persons.' " Id. at 1125–26 n.7. The Court was especially troubled by the fact that under an excessively literal reading in cases involving federal grand juries, only the United States would have standing. Id. at 1126 n.7.

8

We noted the split of authority on witness standing in Rode v. Dellarciprete, 845 F.2d 1195, 1206–07 (3d Cir. 1988), but did not rule on the issue because the plaintiff in that case was "neither a witness nor a litigant." Id. at 1207. This appeal, however, places the issue squarely before us.

As have other courts, we confess some perplexity with the convoluted, rambling and largely unstructured language of the 1871 Act and its 1874 codification. But after patient parsing of the text, it is clear enough that Congress' intent was to extend protection to witnesses and jurors as well as to parties. The word "persons" as used in the 1871 version accomplished that result and the codified text need not be read as inconsistent with the original. The word "party" may well have been, in the codifiers' minds, simply a synonym for "person" or "individual."

We reach the same conclusion even if we do not look to the original text. The codified remedy section states that if one or more conspirators "do . . . any act in furtherance of the . . . conspiracy, whereby another is injured in his person or property, . . ., the party so injured or deprived may have an action for the recovery of damages." 42 U.S.C. S 1985(3) (emphasis added). In this clause, "the party so injured" refers back to the phrase "whereby another is injured." The phrasing and context persuade us that the term "party" is not meant to limit the more general term "another." Thus, the meaning of "another" in the section 1985(2) context is not defined by section 1985(3)'s reference to "party," but rather by section 1985(2)'s reference to parties, witnesses, and jurors. See Brever, 40 F.3d at 1125–26 n.7. This reading is in accord with our caution in Brawer that "it could hardly be argued that Congress gave [the codifiers] a carte blanche right of amendment." 535 F.2d at 838 n.16.

We therefore find ourselves in accord with Brever and hold that a witness or juror may be a "party" entitled to maintain an action under section 1985(2). The fact that Heffernan, at the time of the alleged conspiracy, had neither appeared as a witness, nor been subpoenaed, does not affect his standing. It is enough that he was a potential and obviously important witness. See Malley-Duff & Assoc., Inc. v. Crown Life Ins. Co., 792 F.2d 341, 355 & n. 11 (3d

9

Cir. 1986) (" `Deterrence or intimidation of a potential witness can be just as harmful to a litigant as threats to a witness who has begun to testify.' ") (quoting Chahal v. Paine Webber, Inc., 725 F.2d 20, 24 (2d Cir. 1984)), aff'd, 483 U.S. 143 (1987).

Whether Hunter was aware at the time he filed his suit that Heffernan had already been removed from the SEC investigation does not appear in the record. In any event, naming Heffernan as a defendant appears to have been, in part, a ploy to affect his credibility as a witness in federal court proceedings growing out of the insider trading investigation.

Accordingly, we conclude that Heffernan has standing to bring a section 1985(2) claim. That, however, does not mean that he can successfully establish a right to recovery here.

II.

In addition to alleging a violation of section 1985(2), Heffernan charged defendants under section 1985(1) with conspiring to impede the performance of his duties by filing a frivolous lawsuit and disseminating false and libelous information about him to the media. In contrast to the preceding discussion, there is no dispute over Heffernan's standing to bring suit as a government agent under section 1985(1). See Windsor v. The Tennessean, 719 F.2d 155, 161 (6th Cir. 1983).

Section 1985(1) states in relevant part that if"two or more persons . . . conspire to prevent, by force, intimidation, or threat, . . . [an officer of the United States] from discharging any duties thereof; . . . or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof," then a cause of action exists.3
_____

3. 42 U.S.C. S 1985(1) states in full:

    (1) Preventing officer from performing duties.

    If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from

Both the section 1985(1) and 1985(2) claims require a conspiracy. Whether Heffernan has set out actionable conspiracies is therefore a threshold issue and one that we find dispositive.4

Looking to state law, the District Court concluded that no conspiracy can exist where an attorney's advice or advocacy is for the benefit of his client rather than for the attorney's "sole personal benefit." The Court found this principle consistent with federal law that perceives no conspiracy in the concerted activity of an employee and a corporation, usually termed the "intracorporate conspiracy doctrine."

There are few cases in the Courts of Appeals discussing attorney-client conspiracies in the section 1985 context, but two opinions do provide some guidance. In Doherty v. American Motors Corp., 728 F.2d 334 (6th Cir. 1984), the plaintiff alleged a conspiracy under section 1985(2) between a corporation and its inside, as well as its outside, counsel. Citing the general rule that a corporation cannot conspire with its agents, the Court found that no conspiracy existed, remarking, "it is clear from the record that the actions of the [the corporation's] attorneys were motivated not by personal concerns but by concerns for their clients." Id. at 339-40.

The other case, Travis v. Gary Community Mental Health Center, Inc., 921 F.2d 108 (7th Cir. 1990), included a claim

---

accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties[, then a cause of action exists under section 1985(3)].

4. Accordingly, we need not determine whether the defendants' activities amounted to "force, intimidation, or threat," or whether plaintiff has suffered damages within the terms of the statute. Nor do we reach the defendants' arguments raising the statute of limitations, qualified immunity, causation, or the First Amendment.

11

under section 1985(2) by an employee who alleged a retaliatory discharge by the defendant's employees. The Court concluded that joint conduct by employees did not amount to a conspiracy. Id. at 110. Of particular relevance is the Court's discussion about the defendant's consultation with its outside counsel. Holding that this too was not a conspiracy, the Court reasoned that "[t]reating involvement of a lawyer as the key unlocking S 1985 would discourage corporations from obtaining legal advice before acting, hardly a sound step to take." Id. at 111.

In cases not necessarily involving attorney-client conspiracies, the Courts of Appeals are divided on the applicability of the intracorporate conspiracy doctrine in the section 1985 context. See McAndrew v. Lockheed Martin Corp., 177 F.3d 1310, 1312 (11th Cir. 1999) (listing the Second, Fourth, Fifth, Sixth, Seventh and Eighth Circuits as ascribing to the doctrine, but choosing to follow the First, Third, and Tenth, which had taken the opposite position.).5

We have addressed this issue in several opinions. In Novotny v. Great American Federal Savings & Loan Ass'n, 584 F.2d 1235 (3d Cir. 1978) (en banc), vacated on other gds., 442 U.S. 366 (1979), the plaintiff's complaint did not allege that the corporate defendant conspired with its officers and directors, but rather that a conspiracy existed between the individual officers. Therefore, the issue was whether concerted actions by officers and employees of a corporation could be the basis of a claim under section 1985(3). We held that it could. Id. at 1257.

Subsequently, in Robison v. Canterbury Village, Inc., 848 F.2d 424 (3d Cir. 1988), we pointed out that Novotny did

_____

5. The doctrine has also been carried over to alleged conspiracies involving govenmental entities. See Wright v. Illinois Dep't of Children & Family Services, 40 F.3d 1492, 1507-09 (7th Cir. 1994) (no conspiracy by state agency and co-employees under section 1985(2) for retaliatory disciplinary action against case workers); Hull v. Cuyahoga Valley Joint Voc. Sch. Dist. Bd. of Educ., 926 F.2d 505, 509-10 (6th Cir. 1991) (agents and employees of a public school board did not form a conspiracy under section 1985); Runs After v. United States, 766 F.2d 347, 354 (8th Cir. 1985) (no conspiracy involving members of Indian tribal council).

not "evaluate the force of the proposition that a corporation cannot conspire with itself." Id. at 431 (internal quotation marks omitted). Robison held that a corporation and its president cannot form a conspiracy under section 1985(3). Id. (citing, inter alia, Doherty, 728 F.2d at 339–40; Dombrowski v. Dowling, 459 F.2d 190, 196 (7th Cir. 1972)). We noted, however, that a conspiracy may exist between a corporation and an officer "if the officer is acting in a personal, as opposed to official, capacity." Id.

Along these lines, courts that have followed the doctrine allow an exception when the employees have acted for their sole personal benefit and thus outside the course and scope of their employment.6 That exception is based on the proposition that since the employer would not be subject to liability under respondeat superior, it would not be a conspirator. See Johnson v. Hills & Dales General Hosp., 40 F.3d 837, 841 (6th Cir. 1994). Similar conclusions have been reached in state-court cases involving civil conspiracies. See, e.g., Fraidin v. Weitzman, 611 A.2d 1046, 1077–80 (Md. Ct. Spec. App. 1992) (no conspiracy when attorneys act within scope of employment unless they act for their "sole personal benefit").

Although the case law on intracorporate conspiracies provides a convenient analogy for the attorney-client situation, there are important differences between the agency relationships involved in private corporate activities and those arising in the practice of law. The right of a litigant to independent and zealous counsel is at the heart of our adversary system and, indeed, invokes constitutional concerns. Counsels' conduct within the scope of representation is regulated and enforced by disciplinary bodies established by the courts. Abuses in litigation are

---

6. Some -- but not all -- courts have found exceptions to the doctrine where there were numerous acts constituting a broad pattern of discrimination. See Douglas G. Smith, Comment, The Intracorporate Conspiracy Doctrine and 42 U.S.C. S 1985(3): The Original Intent, 90 Nw. U. L. Rev. 1125, 1159–63 (1996). Furthermore, if an entity were established for the purpose of violating civil rights, different considerations might also apply. Id. at 1163–65. These exceptions are not implicated in this appeal and we therefore need not discuss them.

punishable by sanctions administered by the courts in which the litigation occurs.7

This regulatory framework provides third parties with protection that is lacking in the corporate field. Despite the absence of such safeguards in the business setting, most courts nevertheless apply the intracorporate conspiracy ban. That being so, it follows all the more that we should enforce the ban on conspiracies in the attorney-client context where even more compelling policy concerns exist.

It is, of course, axiomatic that if the challenged conduct occurs outside the scope of representation, no reason for immunity exists and the attorney and the client, as individuals, could form a conspiracy. See Johnson, 40 F.3d at 840-41; Doherty, 728 F.2d at 339-40. However, the mere fact that attorneys have "mixed motives," such as "enhancing" their reputation by aggressive representation, does not remove their conduct from the scope of the agency. See Los Angeles Airways, Inc. v. Davis, 687 F.2d 321, 328 (9th Cir. 1982).

The challenged activity may violate the canons of ethics, but so long as it is within the scope of representation, it does not eliminate the exemption from a conspiracy charge under section 1985. "[S]imply because a lawyer's conduct may violate the rules of ethics does not mean that the conduct is actionable, in damages or for injunctive relief." Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz, 602 A.2d 1277, 1284 (Pa. 1992). The offended third party has a remedy under state law through court imposed sanctions or reference to state disciplinary bodies.

The statements that Bochetto made on camera and the information in the press releases about Heffernan's conduct with Kelly were obviously aimed at discrediting him as a
_____

7. See 28 U.S.C. S 1927; Fed. R. Civ. P. 11(c). Courts have the inherent power to sanction attorneys for bad-faith conduct that is not otherwise covered by Rule 11 or section 1927. See Chambers v. NASCO, Inc., 501 U.S. 32 (1991).

Other remedies might be available to plaintiffs. Indeed, in this case, Heffernan has renewed his claim for wrongful use of civil proceedings under 42 Pa.C.S.A. S 8351 in state court.

14

witness against Hunter. As such, the attorney was acting within the scope of his representation. Whether the chosen means were ethical or appropriate is a separate issue. Attorneys might use unethical tactics in representing clients and yet remain squarely within the scope of their agency.

We cannot say that the activities of Bochetto and his firm were beyond the scope of the attorney-client relationship so as to make them susceptible to characterization as a conspiracy under section 1985. Therefore, because Heffernan has failed to establish a conspiracy under either section 1985(1) or (2), we must affirm the dismissal of this case in its entirety.8

Because the record does not provide the complete background of the defendants' decision to embark on this publicity campaign, we hesitate to be too specific in criticizing their conduct. However, on the facts alleged, we do not wish to leave the impression that we condone the lawyer's tactics or find them worthy of anything but extreme disapproval.

Pennsylvania Rules of Professional Conduct 3.6(c) permits a lawyer to "state without elaboration . . .(2) the information contained in a public record." This, of course, reflects the general privilege applied to court proceedings. We know that the privilege is sometimes abused by practitioners who maliciously insert inflammatory material into court documents hoping for public dissemination. We note, however, that the privilege is qualified and leaves open the possibility of a defamation suit. See Computer Aid, Inc. v. Hewlett-Packard Co., Nos. Civ. A. 96-CV-4150, Civ. A. 97-CV-0284, 1999 WL 458151, at *5-*7 (E.D. Pa. June 15, 1999); see also Williams v. Williams, 246 N.E.2d 333 (N.Y. 1969); Sciandra v. Lynett, 187 A.2d 586, 588-89 (Pa. 1963).

_____

8. Because the predicate 1985 claims cannot stand, dismissal was appropriate for the section 1986 claim. Robison, 848 F.2d at 431 n.10. The District Court also acted within its discretion in dismissing the plaintiff's remaining state law claim without prejudice. See 28 U.S.C. S 1367(c)(3).

15

In the case before us, there is some question whether the publicity generated by the attorneys went beyond the "without elaboration" qualification of Rule 3.6(c). We are not so naive as to believe that there is no exception to the admonition that lawyers are to try their cases only in the courtroom. There may be circumstances where conscientious lawyers must act to defend against adverse publicity where their clients have been tried and convicted by the media long before trial, or where the opposing litigants -- government or private -- have blanketed the community with damaging publicity. See Gentile v. State Bar of Nevada, 501 U.S. 1030, 1042-43 (1991) (plurality); Jonathan M. Moses, Note, Legal Spin Control: Ethics and Advocacy in the Court of Public Opinion, 95 Col. L. Rev. 1811 (1995).

The record before us, however, is silent as to whether there was any such provocation or justification for the publicity campaign. We say no more other than to echo the lament expressed by Judge Gawthrop in Doe v. Kohn Nast & Graf, P.C., 866 F. Supp. 190, 195 n.1 (E.D. Pa. 1994):

> "I find it a source of some regret that in this day and age, the vogue appears to be that lawyers seem to be unable to resist corralling a press conference . . . to trumpet the alleged virtues of their case before the jury has been impaneled. Too many lawyers are trying to try their cases in that arena rather than the proper forum for getting to the truth, within the bounds of due process and fair play. . . . Rule . . . 3.6(a) . . . seems to be more and more honored in the breach, treated as a canonical dead letter, than genuinely adhered to by trial lawyers, either in letter or in spirit."

The judgment of the District Court will be affirmed.

A True Copy:
Teste:

> Clerk of the United States Court of Appeals
> for the Third Circuit